**RECORD NOS. 09-4769(L); 09-5154**

In The

# United States Court of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

## DERRICK LAMONT EVANS, a/k/a Shank, a/k/a Dechee Dan, a/k/a Big Head, a/k/a Debo; MARCUS ANDREW WATKINS, a/k/a Andrew Sparkz,

*Defendants – Appellants*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA AT ABINGDON

————————

## BRIEF OF APPELLANTS

————————

Sandra B. Jelovsek
ATTORNEY AT LAW
3520 Honeywood Drive
Johnson City, Tennessee 37604
(423) 283-0450

*Counsel for Appellant*
 *Derrick Lamont Evans*

Keith N. Hurley
KEITH N. HURLEY, P.C.
2727 McRae Road
Richmond, Virginia 23235
(804) 323-9735

*Counsel for Appellant*
 *Marcus Andrew Watkins*

THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES
(DEFENDANT EVANS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE
(DEFENDANT WATKINS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE
(DEFENDANT EVANS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE
(DEFENDANT WATKINS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF THE FACTS
(DEFENDANT EVANS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT OF THE FACTS
(DEFENDANT WATKINS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

SUMMARY OF ARGUMENT
(DEFENDANT EVANS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SUMMARY OF ARGUMENT
(DEFENDANT WATKINS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

i

ARGUMENT
(DEFENDANT EVANS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

I.    Mr. Evans' mandatory life sentence and career offender status
      based on prior North Carolina drug convictions for which he
      was not punishable by over 12 months imprisonment violates
      his Sixth Amendment right to trial by jury and his Fifth
      Amendment right of Due Process.  The district court's finding
      that the convictions qualified to enhance his sentence is
      contrary to clear Supreme Court Precedent, the plain terms of
      the state statute, and the North Carolina Supreme Court's
      interpretation of that statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      Discussion of the Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

            The Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

            The Law as Applied to Mr. Evans . . . . . . . . . . . . . . . . . . . . . 26

II.   Whether Mr. Evans' plea agreement and guilty plea were
      unknowing and involuntary when they were based upon his
      attorney's and the government's  representation that his prior
      North Carolina Class I drug convictions qualified to enhance
      his sentence, contrary to the plain terms of the North Carolina
      statute, the North Carolina Supreme Court's interpretation of
      the  statute, and clear Supreme Court precedent

      Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      Discussion of the Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

III.   Mr. Evans' guilty plea cannot support a conviction under 21 U.S.C. § 841(b)(1)(A) and a statutory minimum sentence under that section in the absence of a jury finding or his admission as to drug quantity, an element of the aggravated offense of that section . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Discussion of the Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

ARGUMENT
(DEFENDANT WATKINS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Discussion of the Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Rule 11 Inquiry . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Perjured Grand Jury Testimony . . . . . . . . . . . . . . . . . . . . . . . . 38

Ineffective Assistance of Counsel . . . . . . . . . . . . . . . . . . . . . . 39

CONCLUSION
(DEFENDANT EVANS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

CONCLUSION
(DEFENDANT WATKINS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

STATEMENT IN SUPPORT OF ORAL ARGUMENT
(DEFENDANT EVANS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

STATEMENT IN SUPPORT OF ORAL ARGUMENT
(DEFENDANT WATKINS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

iii

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

<b><u>Page(s)</u></b>

## <u>CASES</u>

<u>Apprendi v. New Jersey</u>,
    530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) . . . . . . . . . <u>passim</u>

<u>Blakely v. Washington</u>,
    542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) . . . . . . . . . <u>passim</u>

<u>Carachuri-Rosendo v. Holder</u>,
    560 U.S. ____, 130 S. Ct. 2577 (2010) . . . . . . . . . . . . . . . . . . 13-14, 24, 26

<u>Cunningham v. California</u>,
    549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007) . . . . . . . . 14, 19, 20

<u>Engle v. Isaac</u>,
    456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982) . . . . . . . . . . . . . 26

<u>Harris v. United States</u>,
    536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002) . . . . . . . . . . 32, 33

<u>Harp v. United States</u>,
    406 F.3d 242 (4th Cir. 2005), <u>cert. denied</u>,
    546 U.S. 919, 126 S. Ct. 297, 163 L. Ed. 2d 259 (2005) . . . . . . . . . . <u>passim</u>

<u>In re DNA Ex Post Facto Issues</u>,
    561 F.3d 294 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

<u>Johnson v. Zerbst</u>,
    304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). . . . . . . . . . . . . . . . . 30

<u>Jones v. United States</u>,
    526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999) . . . . . . . . . . 16, 17

<u>McCarthy v. United States</u>,
    394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1968) . . . . . . . . 29, 35

North Carolina v. Norris,
   360 N.C. 507, 630 S.E.2d 915 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Olden v. United States,
   224 F.3d 51 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Ring v. Arizona,
   536 US 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002) . . . . . . . . . . . . . 20

Simmons v. United States,
   09-676, cert granted (Jun. 21, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 26

Smith v. United States,
   09-9611, 561 U.S. ____ (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

State v. Allen,
   359 N.C. 425, 615 S.E.2d 256 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

State v. Allen,
   360 N.C. 569, 635 S.E.2d 899 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

State v. Norris,
   360 N.C. 507, 630 S.E.2d 915 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Booker,
   543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) . . . . . . . . . . . 18, 20

United States v. Brooks,
   524 F.3d 549 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

United States v. Champion,
   09-5084 (4th Cir., rehearing granted, Aug. 6, 2010)(unpublished) . . . . . . 26

United States v. Collins,
   415 F.3d 304 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

United States v. Gonzalez,
   420 F.3d 111 (2d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

United States v. Hyde,
    520 U.S. 670, 117 S. Ct. 1630, 137 L. Ed. 2d 935 (1997) . . . . . . . . . . . . . 35

United States v. Mackins,
    315 F.3d 399 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

United States v. Malcolm,
    432 F.2d 890 (4th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

United States v. Mills,
    955 F.2d 480 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

United States v. Moore,
    931 F.2d 245 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 35, 36

United States v. Osborne,
    514 F.3d 377 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

United States v. Promise,
    255 F.3d 150 (4th Cir. 2001) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

United States v. Pruitt,
    545 F.3d 416 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 23, 24

United States v. Rodriquez,
    553 U.S. 377, 128 S. Ct. 1783, 170 L. Ed. 2d 719 (2008) . . . . . . . . . passim

United States v. Simmons,
    No. 08-4475, 2009WLF 2371939 (4th Cir. Aug. 4, 2009) . . . . . . . . . . . . . 4

United States v. Thornton,
    554 F.3d 443 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Ubakanma,
    215 F.3d 423 (4th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 34

Watson v. United States,
    09-8003, 561 U.S. ____ (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Williams v. United States,
    09-935, 561 U.S. ____ (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16, 31, 38

U.S. CONST. amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

U.S. CONST. amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATUTES

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3232 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 802(44) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

21 U.S.C. § 841 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

21 U.S.C.§ 841(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

21 U.S.C. § 841(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

21 U.S.C. § 841(b)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32, 33

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5

21 U.S.C. § 851 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 9, 29

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

N.C. Gen. Stat. § 15A-1340.14(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . 27

N.C. Gen. Stat. § 15A-1340.14(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . 27

N.C. Gen. Stat. § 15A-1340.17(c) . . . . . . . . . . . . . . . . . . . . . . . . . . 27

N.C. Gen. Stat. § 90-95(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

N.C. Gen. Stat. § 90-95(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

N.C. Gen. Stat. § 90-95(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

N.C. Gen. Stat. § 90-95(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

N.C. Gen. Stat. § 90-95(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## **RULES**

Fed. R. App. P. 4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Crim. P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 34, 35, 36

Fed. R. Crim. P. 11(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Fed. R. Crim. P. 11(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Fed. R. Crim. P. 11(c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Fed. R. Crim. P. 11(d)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Fed. R. Crim. P. 11(d)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Fed. R. Crim. P. 18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## **GUIDELINES**

U.S.S.G. § 2D1.1(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S.S.G. § 4B1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 27

U.S.S.G. § 4B1.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

U.S.S.G. § 4B1.1(b)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# STATEMENT OF SUBJECT MATTER
# AND APPELLATE JURISDICTION

Derrick Lamont Evans and Marcus Andrew Watkins appeal their convictions and sentences following guilty pleas to conspiracy to possess with intent to distribute, and distribution of cocaine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846, in the United States District Court for the Western District of Virginia at Abingdon.

Final judgment was entered in Mr. Evans' case on August 18, 2009 and Mr. Evans filed timely Notice of Appeal on August 17, 2009. [JA 481-488]  Final judgment as to Marcus Watkins was entered on December 1, 2009.  Mr. Watkins filed timely Notice of Appeal on December 2, 2009.  [JA 593, 599]

The District Court had jurisdiction under 18 U.S.C. § 3231 and 18 U.S.C. § 3232 (Fed. R. Crim. Proc. 18).  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and Fed. R. App. Proc. 4(b).

# STATEMENT OF THE ISSUES (DEFENDANT EVANS)

I.   Whether Mr. Evans' prior North Carolina Class I felony drug convictions qualify for purposes of enhancing his federal sentence to mandatory life under 21 U.S.C. § 841(b)(1)(A) and as a career offender under the sentencing guidelines when the maximum possible sentence he could have received for the convictions was less than 12 months.

II.  Whether Mr. Evans' plea agreement and guilty plea were unknowing and involuntary when they were based upon his attorney and the government's representation that his prior North Carolina Class I drug convictions qualified to enhance his sentence, contrary to the plain terms of the North

1

Carolina statute, the North Carolina Supreme Court's interpretation of the statute, and clear Supreme Court precedent.

III.  Whether the district court erred in imposing the statutory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(A) when the requisite drug amount for conviction under this section was not determined by a jury beyond a reasonable doubt or admitted by the defendant.

## STATEMENT OF THE ISSUE (DEFENDANT WATKINS)

I.  Whether the District Court Judge abused his discretion when he denied Mr. Watkins' motion to withdraw his guilty plea when Watkins' guilty plea was based on perjured testimony of a witness and when Watkins was denied the close assistance of effective counsel in violation of the Sixth Amendment to the United States Constitution.

## STATEMENT OF THE CASE (DEFENDANT EVANS)

Mr. Evans and Mr. Watkins and some fifty other persons were indicted on May 28, 2008.  In addition to substantive charges against the various defendants, Count One of the Indictment charged all co-defendants with conspiracy to possess and distribute 50 grams or more of cocaine base and 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846.   [JA 22]

Mr. Evans pled guilty to the conspiracy on August 13, 2008 pursuant to a Plea Agreement entered on August 7, 2008. [JA 40, 66]  The Agreement required Mr. Evans to stipulate that he had three prior North Carolina convictions that qualified to enhance his sentence to mandatory life under § 841(b)(1)(A) and career offender status under U.S.S.G. § 4B1.1. [JA 42, 43]  Pursuant to his plea, Mr. Evans testified over the next few months on behalf of the government in three

2

trials of co-defendants.  [JA 122, 199, 296]  However, following co-defendant Paul

Vaughn's assertions that he had lied before the grand jury about his and others

activities and involvement, several defendants, including Mr. Evans, began

questioning the indictment, seeking to withdraw pleas, and seeking appointment of

new counsel.  [JA 327, 329, 331, 420]

On April 30, 2009, counsel for Mr. Evans filed a motion to withdraw.  This

motion was granted and new counsel was appointed on May 8, 2009. [JA 7, 327]

On May 19, 2009 the government filed notice that Mr. Evans had breached his plea

agreement based upon a pro se letter Mr. Evans sent to the court.  The government

alleged that the letter indicated that Mr. Evans did not accept responsibility, and

also that Mr. Evans had made inconsistent statements. [JA 331a]

On July 6, 2009, new counsel filed on behalf of Mr. Evans an objection to

the Government's Notice of Enhanced Punishment pursuant to 21 U.S.C. § 851

disputing that the prior North Carolina convictions qualified as felony convictions

for purposes of enhancing his federal sentence. [JA 351]  On that same day,

counsel filed on behalf of Mr. Evans a Motion to Withdraw his Plea of Guilty and

Plea Agreement on the grounds that both the plea and the agreement were

unknowing and involuntary due to the government and his counsel's representation

to him that his prior convictions would qualify to enhance his sentence to

mandatory life, which representation was contrary to the plain terms of the

underlying state statute, the North Carolina Supreme Court's interpretation of the statute, and clear precedent of the United States Supreme Court. [JA 334, 339] Following a hearing on July 13, 2009, the district court denied the motion on July 23, 2009, relying on binding Fourth Circuit precedent in Harp v. United States, 406 F.3d 242 (4th Cir. 2005), cert. denied, 126 S. Ct. 297 (2005). [JA 398q-s]  A sentencing hearing was held on August 14, 2009 following which the district court denied Mr. Evans objections to the Presentence Report, found that disputed drug quantity was sufficient by a preponderance of the evidence to convict under § 841(b)(1)(A), that Mr. Evans had breached the terms of the Plea Agreement, and that the government was within its rights in refusing to dismiss the prior Class I convictions as it had agreed in the Plea Agreement.  [JA 462, 463, 464, 468] The district court again found that the disputed prior North Carolina convictions qualified to enhance his sentence to mandatory life, again relying on Harp v. United States, 406 F.3d 242, as well as citing to the reasoning of unpublished Fourth Circuit cases, specifically United States v. Simmons, No. 08-4475, 2009WL 2371939 (4th Cir. Aug. 4 (2009)(unpublished)), a case also relying on Harp. [JA 438, 478]

The Supreme Court has subsequently granted certiorari in Simmons and vacated and remanded that case and others with the same issue to this Circuit for reconsideration.  Simmons v. United States, 09-676.

4

Final judgment was entered on August 18, 2009. [JA 482]  Mr. Evans filed notice of appeal of his conviction and sentence on August 17, 2009. [JA 481]  On September 16, 2009, this court consolidated the appeals of Mr. Evans and co-defendant Marcus Watkins.

## STATEMENT OF THE CASE (DEFENDANT WATKINS)

Mr. Watkins was indicted on May 28, 2008 for one count of conspiracy to possess and distribute 50 grams or more of cocaine base and 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. [JA 22-24]  On July 17, 2008, Mr. Watkins entered a not guilty plea to the charge contained in the indictment. [JA 34-38]  On October 27, 2008 Mr. Watkins, pursuant to a plea agreement, entered a guilty plea to Count One of the indictment, to-wit: conspiracy to possess with the intent to distribute and distribute 50 grams or more of cocaine base. [JA 53-65]

On May 18, 2009, while awaiting sentencing, Mr. Watkins filed a "Motion to Withdraw Plea Agreement," *pro se*, alleging that new evidence in his case revealed that the co-defendants and witnesses provided false testimony, and that Watkins was under duress when he entered his plea. [JA 329-330]  The motion was accompanied by a letter dated May 11, 2009 "firing" his appointed lawyer. [JA 331]  On June 19, 2009, counsel for Mr. Watkins filed a "Motion for New Counsel and Motion to Withdraw." [JA 332-333]

On November 16, 2009, new counsel for Mr. Watkins filed a "Motion to Withdraw Guilty Plea" with accompanying memorandum. [JA 489-507]  On November 30, 2009, a hearing was held before The Honorable James P. Jones regarding the Motion to Withdraw Guilty Plea. [JA 516-551]  The Court denied Mr. Watkins' motion to withdraw his guilty plea. [JA 552]

Final judgment was entered on November 30, 2009 and Mr. Watkins timely noted his appeal.

## STATEMENT OF THE FACTS (DEFENDANT EVANS)

Mr. Evans is a 37-year old African-American from Alamance County, North Carolina.  He grew up poor in a single parent home.  He received honors as an athlete in high school and graduated in 1992.  Mr. Evans moved from North Carolina to the Tri-Cities area of Bristol, Virginia, and northeastern Tennessee in 1999, where he has since resided with his wife and minor children except for brief period in 2003-2004 when he lived in Georgia to pursue his musical career. During this time in the Tri-Cities, he has been self-employed as a barber and a car detailer/restorer, and was pursuing a music career with Kantstop Records, Inc., an entertainment and recording company he started with another co-defendant. [JA 665-666]

Mr. Evans has no juvenile criminal history. [JA 658]  The prior convictions at issue occurred between the ages of 19 and 23.  In 1993, at age 19, Mr. Evans

was convicted of selling one gram of cocaine base to an undercover officer, a Class G felony under N.C. Gen. Stat. 90-95(a)(1) and (b)(1), and was sentenced to 10 years imprisonment.[1] [JA 659]  In 1995, Mr. Evans was convicted of his second felony drug offense, possession with intent to sell one and one-half ounces of marijuana, a Class I felony under N.C. Gen. Stat. 90-95(a)(1) and (3) and (b)(2), and misdemeanor possession of marijuana, for which he received a combined sentence of 18 months probation.  This probation was revoked a couple of months later and he was sentenced to 6-8 months custody. [JA 660]  In April 1997, he was convicted of possession of 7.6 grams of cocaine powder, also punishable as a Class I felony under N.C. Gen. Stat. 90-95(a)(3) and (d)(2), for which he received the maximum presumptive range sentence of 8-10 months. [JA 660]

On May 28, 2008, Mr. Evans and numerous others were indicted in the case at hand for conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine and 50 grams or more of cocaine base between January 2003 and April 30, 2008, in violation of 21 U.S.C. § 841(b)(1)(A). [JA 22]  On June 27, 2008, the government filed notice pursuant to 21 U.S.C. § 851 that it intended to seek enhancement of Mr. Evan's sentence to mandatory life based on the three prior North Carolina felony drug convictions stated above. [JA 32]  In

---

[1] Mr. Evans does not dispute that this Class G felony was punishable by over twelve months.

7

exchange for his plea and cooperation, the government agreed that it would dismiss the two Class I felony convictions from 1995 and the 1997 from the § 851 information. [JA 42, 43, 72-73]

In accordance with his Plea Agreement, Mr. Evans testified on behalf of the government in the trials of three co-defendants in October and December of 2008. [JA 86, 121, 199]  On April 30, 2009, Mr. Evans' counsel moved to withdraw. [JA 327]  The court granted the motion and appointed new counsel on May 8, 2009. [JA 7, Dkt. Entry 1829]

On May 19, 2009 the government filed notice that Mr. Evans had failed to comply with his plea agreement and that it would refuse to recommend that Mr. Evans receive credit for acceptance of responsibility and would refuse to dismiss the two prior North Carolina Class I felony drug convictions as agreed in the Plea Agreement. [JA 331(a)]  As grounds for this, the government alleged that on or about March 17, 2009 Mr. Evans had made false statements in an affidavit inconsistent with his earlier statements concerning the involvement of co-defendant Reginald Morton, and that Mr. Evans had filed a letter on April 14, 2009 in which he made statements inconsistent with acceptance of responsibility. [JA 331(a)]

On July 6, 2009, new counsel filed on behalf of Mr. Evans an objection to the Government's Notice of Enhanced Punishment pursuant to 21 U.S.C. § 851,

disputing that the Class I North Carolina convictions qualified as felony convictions for purposes of enhancing his federal sentence. [JA 334] Also on July 6, 2009, counsel filed on behalf of Mr. Evans a Motion to Withdraw his Plea of Guilty and his Plea Agreement on the grounds that the Agreement and Plea were unknowing and involuntary because he had not been informed prior to his guilty plea that there was a legal question as to whether his North Carolina convictions were qualifying prior predicate convictions to enhance his sentence to mandatory life or as a career offender. [JA 334-339] Following a hearing on July 13, the district court denied the motion by written order on July 23, 2009. [JA 398(a)]

Mr. Evans again contested, in his Sentencing Memorandum and again at his sentencing hearing on August 14, 2009, that two of the prior North Carolina convictions qualified as predicate enhancing convictions. [JA 399, 435-439] He also continued to dispute drug quantity and the district court found by a preponderance of the evidence that drug quantity was sufficient to convict under § 841(b)(1)(A). [JA 463, 479-480] The court found that Mr. Evans had breached the terms of his Plea Agreement and declined to enforce the terms of the Plea Agreement in which the Government had agreed to dismiss the two Class I prior convictions. [JA 468] Based on the prior North Carolina convictions, the court sentenced Mr. Evans to mandatory life pursuant to the enhancement provisions of § 841. [JA 472, 478]

9

## STATEMENT OF THE FACTS (DEFENDANT WATKINS)

Marcus Andrew Watkins is a thirty-two year old black male from Burlington, North Carolina.  He attended school through the tenth grade and his only regular work has been in the music business.  He abused powder, then crack cocaine since 2002 and described his addiction as severe.  He never received any treatment for substance abuse.  His family has a history of dementia and Alzheimer's disease. [JA 497]

On August 12, 2008, Marcus Watkins, with counsel, signed a plea agreement with the United States. [JA 53]  Prior to entering into the plea agreement, Mr. Watkins, in an effort to cooperate, provided information to the United States Attorney and the DEA. [JA 490]  Also prior to entering into the plea agreement, Watkins was advised that he could possibly receive a life sentence if he went to trial.  The plea agreement contained a stipulation or agreement by the government that the "offense involved at least 500 grams of cocaine base, but less than 1.5 kilograms of cocaine base with a corresponding offense level of 34" under the U.S.S.G. § 2D1.1(c)(2).  No statement of facts accompanied the plea agreement. [JA 53]

On October 6, 2008, Mr. Watkins testified for the government in the *United States v. Duty*, *et.al* trial.  Mr. Watkins' attorney was not present when he testified. [JA 491]

10

On October 27, 2008, Mr. Watkins, with counsel, entered a guilty plea to Count One of the Indictment. [JA 196]  The AUSA offered a summary of the facts in support of the plea. [JA 103-195]  Rather than conduct the Rule 11 inquiry on each defendant personally, the Court, went through the process *en masse* with other defendants and Mr. Watkins. [JA 171]  During the Rule 11 inquiry, Mr. Watkins advised the Court that he did "contest" and "dispute" the facts. [JA 195]  When asked if "the facts Mr. Lee just stated" were true, Mr. Watkins responded "Yeah, I understand them." [JA 195]  Mr. Watkins plea agreement was not specifically accepted by the Court.

On January 23, 2009, Paul A. Vaughn, a co-defendant, began writing notarized letters to various co-defendants and lawyers involved in the case. Watkins received a letter from Vaughn who said he had lied about Watkins' involvement in the case. [JA 508-509]  Watkins sent the letter to his attorney, Mr. Cleaveland.  Watkins received a second notarized letter from Vaughn dated February 19, 2009 [JA 509] where Vaughn said he made false statements to the grand jury and at trials when he had testified as a government witness.  Vaughn maintained that he had been coerced and threatened to provide the false testimony.

On March 9, 2009, Mr. Watkins wrote to his attorney and advised him that he had provided false information in his own proffer and that he wanted out of his plea agreement.  In his letter Watkins stated he "was afraid for my life" and he was

11

not guilty of the conspiracy charge. He mentioned the Vaughn recantation and specifically challenged the use of Vaughn's false grand jury testimony in obtaining the indictment against Watkins. [JA 511-512]

On April 3, 2009, the Court forwarded a letter dated March 27, 2009, to opposing counsel from Watkins that had been received by the Magistrate Judge. The letter concerned the Paul A. Vaughn recantation, alleged coercion when Watkins signed his plea agreement, an issue with the attributed drug weight to Watkins, allegations that his counsel had been ineffective and Mr. Watkins' insistence that he was innocent.

On May 18, 2009, Mr. Watkins filed a motion to withdraw the plea agreement, *pro se*. In support of his motion he alleged the false grand jury testimony of Paul A. Vaughn, the credibility issues of witnesses; the coercion of the potential life sentence if he went to trial; the non-review of discovery by Mr. Watkins; and his innocence of the charges against him. The motion was accompanied by a letter, dated May 11, 2009, firing his lawyer, Mr. Cleaveland. [JA 329]

On June 1, 2009, Watkins wrote a letter to his attorney insisting that he wanted to withdraw his guilty plea. [JA 515]

On June 18, 2009, an evidentiary hearing was held by the Court on motions for new trials in the *Duty* case. Paul A. Vaughn, Derrick L. Evans, and Mr.

12

Watkins testified as defense witnesses at the hearing. Vaughn maintained that he had been threatened with a life sentence by the investigator and he acknowledged that he had lied about others in the case in grand jury and trial testimony to help himself. Derrick Evans testified that he had been pressured by the Government with a potential life sentence to provide false testimony. Watkins was allowed to testify at the hearing without benefit of counsel. [JA 496-497]

## SUMMARY OF ARGUMENT (DEFENDANT EVANS)

Mr. Evans' 1995 and 1997 convictions were Class I felonies under North Carolina law. Based upon the plain terms of the applicable North Carolina sentencing statute and the facts and circumstances of the convictions, including Mr. Evans criminal history points at the time, Mr. Evans was not subject to a sentence of over one year, even if the court had found aggravating factors, which it did not. Therefore the convictions do not qualify to enhance Mr. Evans sentence under either 21 U.S.C. § 841 or U.S.S.G. § 4B1.1(b)(A). Carachuri-Rosendo v. Holder, 560 U.S. (2010), 130 S. Ct. 2577 (2010); United States v. Rodriquez, 553 U.S. 377 (2008); United States v. Pruitt, 545 F.3d 416 (6th Cir. 2008).

Furthermore, in the absence of a plea to or jury finding of aggravating circumstances, any sentence over 12 months for either of these convictions would have been in violation of Mr. Evans Fifth and Sixth Amendment rights as set forth

in Apprendi v. New Jersey,[2] Blakely v. Washington,[3] and again in Cunningham v. California.[4] Relying on Apprendi and Blakely, the North Carolina Supreme Court has held that in the absence of a plea to or a jury finding of aggravating factors beyond a reasonable doubt, the statutory maximum sentence allowed for an offense under the North Carolina sentencing statute is the top of the prescribed presumptive range for the particular offense class. State v. Norris, 360 N.C. 507, 630 S.E.2d 915 (2006).

In addition, Mr. Evans' guilty plea and plea agreement were unknowing and involuntary. They were based upon representations of law by his counsel and the government that there was no question but that his prior North Carolina convictions qualified as predicate convictions to enhance his sentence to mandatory life and to career offender status. These representations were made despite the plain terms of the state statute and controlling state law that the convictions would not be punishable by more than 12 months imprisonment, as well as clear Supreme Court precedent that such an application would be unconstitutional. Based upon these representations, Mr. Evans gave up constitutional rights including a trial by jury and the right not to be a witness

---

[2] Apprendi v. New Jersey, 530 U.S. 466 (2000).

[3] Blakely v. Washington, 542 U.S. 296 (2004).

[4] Cunningham v. California, 549 U.S. 270 (2007).

against himself, as well as his right of appeal of this or any issue or to file a petition for habeas relief.

Finally, Mr. Evans' conviction and sentence under § 841(b)(1)(A) is unconstitutional because the drug quantity attributable to him necessary to convict under that aggravated section was not proved to or found by a jury beyond a reasonable doubt or admitted by the defendant.

## SUMMARY OF ARGUMENT (DEFENDANT WATKINS)

Mr. Watkins guilty pleas was based on perjured testimony and misinformation provided by the government. Furthermore, he was threatened with life in prison if he did not accept the plea agreement. Mr. Watkins' counsel was not present during all critical stages of his prosecution. Based on the factors set forth in United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991), the District Court Judge abused his discretion by not allowing Mr. Watkins to withdraw his guilty plea.

## ARGUMENT (DEFENDANT EVANS)

I.    Mr. Evans' mandatory life sentence and career offender status based on prior North Carolina drug convictions for which he was not punishable by over 12 months imprisonment violates his Sixth Amendment right to trial by jury and his Fifth Amendment right of Due Process.  The district court's finding that the convictions qualified to enhance his sentence is contrary to clear Supreme Court Precedent, the plain terms of the state statute, and the North Carolina Supreme Court's interpretation of that statute.

Standard of Review:

The interpretation of state law and determination of whether state convictions qualify as predicate felonies for purposes of enhancing the Appellant's federal sentence are questions of law that this court reviews *de novo*.  United States v. Thornton, 554 F.3d 443, 445 (4th Cir. 2009).

Discussion of the Issue:

*The Law*:

The rule of law, as stated in Jones v. United States, 526 U.S. 227 (1999), and reiterated in Apprendi, is:

> [U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt (citing Jones, 526 U.S. at 243, n. 6).  The Fourteenth Amendment commands the same answer in this case involving a state statute.

Apprendi, 530 U.S. at 476.

16

Jones and Apprendi were further defined by Blakely v. Washington,[5] a case in which the defendant pled guilty to a Class B felony in Washington State.  Like North Carolina, Washington law limited the sentence a judge could impose to standard ranges within the felony class, but allowed the judge to sentence to a higher range in the offense class based on a finding of substantial and compelling reasons.  The state court sentenced Blakely above the maximum 53 months for the standard range to 90 months based on its findings of compelling reasons.  The offense statute prescribed a maximum possible sentence of 10 years.

Applying the rule of law set forth in Jones and Apprendi, the Supreme Court reversed Blakely's sentence and remanded to the state court, finding that the facts admitted in the plea supported only the maximum sentence for the standard range, i.e., 53 months.  Blakely clearly holds that even though the applicable statute allowed a sentence of 90 months for a finding of compelling reasons, and indeed up to 10 years for any and all persons convicted under the applicable felony class, because the facts supporting a sentence above the top of the standard range for the applicable felony class were neither admitted by petitioner nor found by a jury, the sentence violated his Sixth Amendment right to trial by jury.  Blakely, 542 U.S. at 296.

---

[5] Blakely v. Washington, 542 U.S. 296 (2004).

Following Apprendi and Blakely, a panel of the Fourth Circuit decided

Harp v. United States, 406 F.3d 242 (4th Cir. 2005), cert. denied, 126 S. Ct. 297

(2005), which case is in direct conflict with the above Supreme Court precedent.

The Harp court held that the principles announced in Apprendi, and Blakely and

Booker[6] did not apply to North Carolina's sentencing act.  The Harp panel adopted

the hypothetical "worst possible defendant" analysis to conclude that the relevant

statutory maximum sentence under North Carolina law was the maximum sentence

any defendant could possibly receive for any conceivable behavior in the

respective offense class.

Shortly thereafter, the North Carolina Supreme Court flatly rejected Harp's

holding and interpretation of North Carolina law.  The North Carolina Supreme

Court held that, like the state statutes at issue in Blakely, the language of North

Carolina's structured sentencing act allowed the judge to sentence above the

prescribed maximum sentence of the presumptive range if the judge found

aggravating factors.  However, in accordance with Blakely, the North Carolina

Supreme Court held that any sentence based on judge findings of aggravated

factors in excess of the maximum sentence allowed under the prescribed

presumptive range for an offense class in North Carolina would be an

---

[6] United States v. Booker, 543 U.S. 220 (2005).

18

unconstitutional application of the North Carolina statute.  The court explicitly

held:

> Applied to North Carolina's structured sentencing scheme, the rule of
> <u>Apprendi</u> and <u>Blakely</u> is: Other than the fact of a prior conviction, any
> fact that increases the penalty for a crime beyond the prescribed
> presumptive range must be submitted to a jury and proved beyond a
> reasonable doubt.

<u>State v. Allen</u>, 359 N.C. 425, 437, 615 S.E.2d 256, 264-65 (July 1, 2005).

Subsequently, the North Carolina Supreme Court withdrew the <u>Allen</u> opinion on

unrelated grounds.  *See* <u>State v. Allen</u>, 360 N.C. 569, 635 S.E.2d 899 (2006).

However, shortly thereafter, the North Carolina Supreme Court reaffirmed the

above law as stated in <u>Allen</u>, stating unequivocally again that in the absence of a

finding of aggravating circumstances by a jury, the maximum statutory sentence in

North Carolina is the top of the prescribed presumptive range for the respective

offense class.  <u>North Carolina v. Norris</u>, 360 N.C. 507, 630 S.E.2d 915 (2006).

In a subsequent decision by the United States Supreme Court, <u>Cunningham</u>

<u>v. California</u>,[7] the Court further confirmed that the North Carolina Supreme Court

was correct in its application of the North Carolina statute.  In <u>Cunningham</u>, unlike

the North Carolina Supreme Court, the California Court of Appeals interpreted that

state's sentencing statutes to allow for a higher sentence than stated in the standard

---

[7] <u>Cunningham v. California</u>, 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856
(2007).

range if the judge found aggravating factors. The Supreme Court reversed the California Court of Appeals and reiterated it's earlier holdings in <u>Apprendi</u>, <u>Ring</u>,[8] <u>Blakely</u>, and <u>Booker</u>, stating again, unequivocally, that "the relevant 'statutory maximum' . . . is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." <u>Cunningham</u>, 549 U.S. at 275, (emphasis in original), citing <u>Blakely</u>, 542 U.S. at 303-304. The Court cited with approval those states, specifically citing North Carolina, that had interpreted and/or altered their sentencing statutes to conform to this rule. <u>Cunningham</u>, 549 U.S. at 294, n. 17.

The following year the Supreme Court decided <u>United States v. Rodriquez</u>, 553 U.S. 377 (2008). <u>Rodriquez</u> involved interpretation of the Armed Career Criminal Act and enhancement of a federal sentence based upon a prior state conviction and the interpretation of the applicable state statute. While <u>Rodriquez</u> did not raise Sixth Amendment issues, it is instructive in that it clearly rejects the categorical "worst possible defendant" analysis employed in <u>Harp</u> when looking at qualifying and non-qualifying enhancements under the Armed Career Criminal Act (ACCA). The Washington statute at issue in <u>Rodriquez</u> provided for two different maximum sentences within the same offense for two distinct categories of conduct- first offender and repeat offender. The repeat offender sentence qualified for

---

[8] <u>Ring v. Arizona</u>, 536 U.S. 584 (2002).

enhancement of the defendant's federal sentence and the first offender sentence did not. The Supreme Court looked to language of the underlying state statute and the specific facts surrounding Mr. Rodriquez's conviction to find that under the Washington statute, Mr. Rodriquez did in fact fall into the category of repeat offender at the time of his underlying conviction and that he was therefore subject to the 10-year maximum sentence that qualified to enhance his sentence under the ACCA, as opposed to the non-qualifying 5-year maximum sentence if he had been a first-time offender.

Similarly, the North Carolina statute at issue provides for two categories of defendants with two different maximum sentences: 1) a Class I felony with no finding of aggravating factors with the maximum sentence being the top of the prescribed Presumptive sentence range, i.e., 10 months/absolute maximum of 12 months, and 2) a Class I felony with a jury finding or plea to aggravating factors with the maximum sentence being the top of the Aggravating Factors sentence range, or 12 months/absolute possible maximum of 15 months. The rule of law applied in <u>Rodriquez</u> is clear: In determining whether prior state convictions qualify to enhance a federal sentence, the federal sentencing court should look to the terms of the underlying state statute and the particular facts and circumstances surrounding the particular defendant's conviction to determine the specific defendant's maximum sentence within the terms of the state statute.

In <u>Rodriquez</u> the Court flatly rejected the government's "worst possible defendant" argument that all defendants convicted of the underlying Washington statute, i.e., those in the first-offender category as well as the more culpable repeat offender category, would be subject to the maximum 10-year sentence prescribed by the statute for the most culpable repeat offender, and thus all defendants would qualify for enhancement under the ACCA. The Court held that even though the language of the ACCA broadly refers to "the offense," as opposed to any categories of the offense or characteristics of offenders, the better interpretation of the ACCA was that it would allow for two maximum sentences as prescribed in the Washington statute for the two categories of offenders.

<u>Rodriguez</u> supports that when determining whether a prior conviction qualifies for purposes of enhancing a federal sentence based upon an underlying "offense," (like the case at hand) the federal sentencing court must look to the specific terms of the underlying state statute. If the statute prescribes more than one maximum sentence for different categories of conduct or defendants, and one maximum sentence qualifies for purposes of federal sentencing enhancement but another does not, then the court must look to the specific factors surrounding the particular defendant's prior convictions to determine if the underlying convictions qualify for purposes of enhancing the defendant's federal sentence.

The Court also rejected the Government's argument that this particularized determination would require federal courts to "'engage in difficult inquiries regarding novel question of state law and complex factual determinations about long-past proceedings in state courts.'" Rodriquez, 128 S. Ct. at 388-389.[9]

In United States v. Pruitt, 545 F.3d 416 (2008), a panel of the Sixth Circuit addressed the exact question raised in the instant case and unanimously vacated the defendant's sentence, all agreeing that the plain terms of the North Carolina statute mandated that the district court must look at the particular defendant's prior record level at the time of the predicate convictions and determine the minimum and maximum sentence range to which the particular defendant was subject. The panel determined that under the plain terms of the North Carolina statute, a defendant convicted of a Class I felony "who has a prior record of less than V cannot be sentenced to a term of imprisonment exceeding one year, regardless of whether he or she is sentenced in the aggravated, presumptive, or mitigated sentencing range." Pruitt, 545 F.3d at 422. The Sixth Circuit found that North Carolina's "use of a

---

[9] The Court pointed in Rodriguez to appropriate discernible facts to determine whether a particular defendant's exposure for the prior state conviction, i.e, whether he had in fact received an enhancement, or the judgment documents, whether the jurisdiction itself required the prosecution to submit a formal charging document in order to obtain the recidivist enhancement, or the plea colloquy that will often include a statement of maximum allowable penalty. *Id.*

defendant's prior record level in the determination of a maximum sentence reflects a clear legislative judgment to vary a defendant's sentencing exposure based on criminal history.  And unlike the imposition of an aggravated sentence, the determination of Pruitt's prior record level was not a matter left to the wide discretion of the sentencing judge."  Pruitt, 545 F.3d at 422-423.

The Sixth Circuit found Rodriquez to be persuasive authority, stating that "the Supreme Court clearly indicated that consideration of enhancement was proper only in circumstances where the particular defendant actually faced the possibility of the enhancement."  Pruitt, 545 F.3d at 423.

And most recently, in Carachuri-Rosendo v. Holder,[10] the Supreme Court again clearly rejects Harp's hypothetical "worst possible defendant" analysis in yet another case involving whether prior convictions qualify for the enhancement provisions of a federal law.  130 S. Ct. 2586.  This case involved the consequences of prior drug convictions in deportation proceedings.  Even though the argument of the "worst hypothetical defendant" had clearly failed in Rodriquez, the Government tried again in Carachuri, arguing that because Carachuri's underlying state misdemeanor conviction "could have been" enhanced to a felony under the applicable state statute, it would therefore qualify as a felony under the relevant federal deportation statutes, and somehow arguing that Rodriquez actually

---

[10] Carachuri-Rosendo v. Holder, 560 U.S. ____, 130 S. Ct. 2577 (2010).

supported this analysis.  Again rejecting the hypothetical "worst possible defendant" analysis, the Court stated that "[t]o the extent that <u>Rodriquez</u> is relevant to the issue at hand, *we think the contrary is true*."  560 U.S.___, 130 S. Ct. 2577, n. 11 and 12, emphasis added.

In deciding the issue of qualifying prior convictions under North Carolina law, the Fourth Circuit has persistently relied on <u>Harp</u> and applied the hypothetical "worst possible defendant" approach to determine that any defendant convicted of a Class I felony is punishable up to 15 months, the highest sentence that any defendant with the worst aggravating factors could possibly receive, regardless of the maximum sentence the statute plainly prescribes for the individual defendant based upon his criminal history, or regardless of the facts as admitted by the defendant or found by a jury.  <u>Harp</u> is directly contrary to the rules of law announced in the above controlling Supreme Court cases.

Furthermore, North Carolina's highest court has said that the <u>Harp</u> interpretation of the North Carolina statute is not a correct interpretation or application of North Carolina law.  <u>Harp</u> and its successive cases are in direct conflict with the law of this Circuit regarding deference to a state's highest court's interpretation of its own statutes.  Mr. Evans respectfully submits that this court has the obligation to defer to that court's interpretation of North Carolina law.

Engle v. Isaac, 456 U.S. 107, 128-129 (1982), and In re DNA Ex Post Facto Issues,

561 F.3d 294, 300 (4th Cir. 2009).

Mr. Evans respectfully submits that this Circuit's holding in Harp and

subsequent cases relying on Harp's "hypothetical" approach are contrary to clear

Supreme Court precedent outlined above.  Most recently, on June 21, 2010, the

Court has granted certiorari and summarily vacated and remanded four cases from

this court relying on Harp, with instructions for the court to reconsider the cases in

light of it's decision in Carachuri-Rosendo v. Holder, 560 U.S. ____ (2010), which

case, as discussed above, clearly rejects the "hypothetical" defendant approach

used in Harp.  See Watson v. United States, 09-8003 (4th Cir. No. 06-4788),

Williams v. United States, 09-9351 (4th Cir. No. 09-4065), Smith v. United States,

09-9611 (4th Cir. No. 09-4118), and Simmons v. United States, 09-676 (4th Cir.

No. 08-4475).[11]

### The Law as Applied to Mr. Evans:

Mr. Evans' Presentence Report indicates that at the time of his July 17, 1995

conviction, he had a prior misdemeanor assault offense and the prior 1993 Class G

---

[11] As of the filing of this brief, oral argument for this Circuit's reconsideration of
Simmons is tentatively scheduled for the week of 12/7/10-12/12/10.  The
remaining cases that were vacated and remanded on the same issue are being held
in abeyance pending this court's decision in Simmons.  This court has also granted
the motion for rehearing en banc in the case of United States v. Champion, (4th
Cir. No. 09-5084), which is also being held in abeyance pending the decision in
Simmons.

drug felony.  Under N.C. Gen. Stat. 15A-1340.14(b)(3), he would have been assigned 4 points for the felony offense and one point for the misdemeanor offense, for a prior record level of III.  Under N.C. Gen. Stat. 15A-1340.17(c), for a Class I felony, Prior Record Level III, he would have a sentence range of 5-6 months in the Presumptive Range, but even if there was a plea or finding of aggravating factors that would have bumped him into the Aggravated Category, his sentence range would be 6-8 months, or a maximum possible sentence of 8 months. For the April 18, 1997 conviction, Mr. Evans now has three prior convictions, which, under N.C. Gen. Stat. 15A-1340.14(b)(3) and (4) would put him at seven points or again a Prior Record Level III.  The maximum sentence range for this Class I felony, Prior Record Level III is, again even if there was a finding of aggravated factors, 6-8 months, with a maximum possible sentence of only 8 months.  With his particular prior criminal history, Mr. Evans could not have been sentenced to a term of imprisonment over 12 months under the North Carolina sentencing scheme, even if the North Carolina court or a jury had found aggravating circumstances in those prior offenses, which it did not. [12]

Neither of the Class I felony convictions qualify to enhance Mr. Evans sentence under 21 U.S.C. § 841 or U.S.S.G. § 4B1.1.  Title 21 U.S.C.

---

[12] While not determinative, it should be noted that on both convictions, Mr. Evans was properly sentenced within the  presumptive sentence range for a Class I felony, 6-10 months.

§ 802(44) defines "felony drug offense" as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marijuana, or depressant or stimulant substances."  U.S.S.G. § 4B1.2(b) likewise defines "controlled substance offense" as an offense "punishable by imprisonment for a term exceeding one year."  As in Rodriquez, the underlying offense and the applicable minimum-maximum sentence range in this case is defined by the terms of the underlying statute, which when applied to Mr. Evans would be Prior Record Level III in the Class I Felony Presumptive Range, a non-qualifying conviction.

II.     Whether Mr. Evans' plea agreement and guilty plea were unknowing and involuntary when they were based upon his attorney's and the government's representation that his prior North Carolina Class I drug convictions qualified to enhance his sentence, contrary to the plain terms of the North Carolina statute, the North Carolina Supreme Court's interpretation of the statute, and clear Supreme Court precedent.

Standard of Review:

This court reviews the district court's denial of a motion to withdraw a guilty plea for abuse of discretion.  United States v. Ubakanma, 215 F.3d 423, 424 (4th Cir. 2000).

<u>Discussion of the Issue</u>:

"[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." <u>McCarthy v. United States</u>, 394 U.S. 459, 466 (1968).

Mr. Evans knew that his prior North Carolina convictions were in fact called "felonies" under North Carolina law. However, he had no knowledge or understanding of the law that defined whether these felonies qualified to enhance his federal sentence. The only thing he knew or understood about the law in relation to those facts was what the government told him in the § 851 notice, what was stated in the plea agreement, and what his attorney told him - that these felonies qualified to enhance his sentence to mandatory life and career offender status. Notwithstanding this Circuit's decision in <u>Harp</u>, this information was contrary to Supreme Court precedent, the plain terms of the underlying state statute, and the North Carolina Supreme Court's interpretation of the correct application of the statute.

To avoid what he was led to believe was an absolute and unarguable mandatory life sentence, Mr. Evans believed he had no choice but to sign a plea agreement which required him to waive all rights to appeal, even if the sentence

29

was unconstitutional, as well as all rights to collateral review, including ineffective assistance and prosecutorial misconduct.  For such waivers to be valid under the Due Process Clause, they must be "an intentional relinquishment or abandonment of a known right or privilege."  <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938).  It is hard to imagine how such a waiver can be "intentional relinquishment" of a known right when it is based upon an incorrect representation of law by the Government and his attorney that was contrary to Supreme Court precedent and a clear unconstitutional application of law under that precedent, as well as the plain terms of the underlying North Carolina statute and it's application by that state's highest court.

Fed. Rule Crim. Proc. 11(d)(2)(B), gives the district court authority to allow Mr. Evans to withdraw his plea agreement and plea prior to sentencing for "fair and just reasons."  In addition, Fed. Rule Crim. Proc. 11(d)(2)(A) allows defendant to withdraw a plea of guilty after the court accepts the plea, but before sentencing if the court rejects a plea agreement under Rule 11(c)(5) or 11(d)(2)(A), the defendant can show a fair and just reason for requesting the withdrawal.

Mr. Evans submits that he did show the district court fair and just reasons to grant his motion, including the failure of even his own attorney to inform him prior to the plea that there was a valid legal argument supported by clear Supreme Court Precedent that the Class I felonies would not qualify to enhance his sentence.  At

the very least, it would only be fair and just to grant Mr. Evans motion to withdraw his waiver of appellate and collateral review, if nothing else.  The requirement in the plea agreement to waive all right to appeal his sentence, even though the sentence is unconstitutional by controlling Supreme Court and state law, as well as all right to collateral review, is particularly onerous, unfair and unjust under the Due Process clause of the Fifth Amendment.

III.  Mr. Evans' guilty plea cannot support a conviction under 21 U.S.C. § 841(b)(1)(A) and a statutory minimum sentence under that section in the absence of a jury finding or his admission as to drug quantity, an element of the aggravated offense of that section.

Standard of Review:

This court reviews *de novo* the district court's legal decisions regarding a statutory sentencing enhancement and statutory construction.  United States v. Osborne, 514 F.3d 377, 387 (4th Cir. 2008).

Discussion of the Issue:

Mr. Evans has consistently contested the amount of drug attributed to him and there was no jury finding regarding drug quantity.  As such, his sentence must fall within the default penalty section of § 841(b)(1)(C).  *See* Sentencing Memorandum. [JA 401, 411-414]

Based upon the evidence presented in trials of co-defendants and at sentencing, the court found that the preponderance of evidence supported a finding of sufficient drug quantity for conviction under 841(b)(1)(A). [JA 463]  The

31

district court recognized that the question presented here was "not entirely free from doubt," but found that in accordance with <u>Harris v. United States</u>, 536 U.S. 545 (2002), facts increasing the mandatory minimum sentence, but not the maximum may be determined by the judge. [JA 479] The court reasoned that based on its finding of drug quantity attributable to Mr. Evans, the provisions of 841(b)(1)(A) would apply, which would subject Mr. Evans to a minimum sentence of twenty years, which was not more than the maximum twenty years authorized by 841(b)(1)(C). The court then reasoned that the additional increase in sentence to mandatory life was based upon past drug convictions that need not be proved to a jury. [JA 479-480]

<u>Harris</u> did not alter the rule that "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." <u>Apprendi</u>, 530 U.S. at 490. The penalties set forth in §§ 841(b)(1)(A) and (b)(1)(B) are based upon drug quantities which this circuit has recognized are elements of the offense. <u>United States v. Promise</u>, 255 F.3d 150, 156 (4th Cir. 2001) (en banc).

In a charged conspiracy, the specific quantity of drug attributable to each individual defendant is used to establish the threshold drug quantity for conviction under the appropriate section of § 841. In the absence of a jury determination beyond a reasonable doubt or admission by Mr. Evans as to drug quantity

attributable to him, Mr. Evans' sentence must fall within the default penalty section

of § 841(b)(1)(C).  United States v. Brooks, 524 F.3d 549, 557 (4th Cir. 2008);

United States v. Collins, 415 F.3d 304, 314 (4th Cir. 2005).

The district court's finding as to drug quantity attributable to Mr. Evans

bumped him from conviction under 841(b)(1)(C) and the default maximum

sentence of 20 years (30 years with one prior qualifying conviction) to a conviction

under § 841(b)(1)(A) and a mandatory life sentence, unquestionably more than the

maximum sentence authorized by § 841(b)(1)(C).  The district court erred in

mixing the sections of § 841 to arrive at a mandatory life sentence under

841(b)(1)(A).  "Nothing in the structure of the statute suggests that these

corresponding minimums and maximums, or any of the others prescribed in the

statute, can be delinked to permit mixing and matching across subsections to create

hybrid sentencing ranges not specified by Con gress."  United States v. Gonzalez,

420 F.3d 111, 121 (2d Cir. 2005).

Also, in the Harris case, the statutory maximum remained fixed throughout

and only the statutory minimums changed, as contrasted with the changing

statutory maximums based upon drug quantity in § 841.  Gonzalez, 420 F.3d at

126.

The district court's conviction and sentence of Mr. Evans under

§ 841(b)(1)(A) based upon drug quantity neither proved to or found by a jury or

admitted by the defendant was plain error and was not harmless.  *See* <u>United States</u> <u>v. Mackins</u>, 315 F.3d 399, 409 (4th Cir. 2003).

Mr. Evans respectfully asks the court to vacate his conviction and sentence as to this issue as well.

## ARGUMENT (DEFENDANT WATKINS)

<u>Standard of Review</u>:

This court reviews the district court's denial of a motion to withdraw a guilty plea for abuse of discretion.  <u>United States v. Ubakanma</u>, 215 F.3d 423, 424 (4th Cir. 2000).

<u>Discussion of the Issue</u>:

According to Rule 11, Federal Rules of Criminal Procedure, "[a] defendant may withdraw a plea of guilty ... after the court accepts the plea, but before it imposes sentence if: ... the defendant can show a fair and just reason for requesting the withdrawal."

The determination is entrusted to the discretion of the district court.  A "fair and just reason" is required once the court has accepted the plea even where the court has deferred decision on whether to accept the plea agreement.  <u>United States</u> <u>v. Hyde</u>, 520 U.S. 670 (1997).

In <u>United States v. Moore</u>, 931 F.2d 245, 248 (4th Cir. 1991), the Court set forth six factors to be considered regarding a motion to withdraw a guilty plea: (1)

whether the defendant provided credible evidence that his plea was not knowing or voluntary; (2) whether the defendant credibly asserted his legal innocence; (3) whether there was a delay between entering the plea and moving for withdrawal; (4) whether the defendant had close assistance of competent counsel; and (6) whether withdrawal will inconvenience the court and waste judicial resources.

Mr. Watkins maintains the record supports his argument that the trial Judge should have allowed him to withdraw his guilty plea.  The errors committed during the Rule 11 inquiry by the Court on October 27, 2008; the false grand jury testimony of Paul A. Vaughn which led to the indictment of Mr. Watkins and others; the subsequent undue pressure by the Government and counsel on Mr. Watkins to cooperate and plead guilty and the threats by the co-defendants.

*Rule 11 Inquiry*:

In <u>McCarthy v. United States</u>, 394 U.S. 459 (1969), the Supreme Court held a plea cannot be deemed voluntary unless the defendant understands the law in relation to the facts of the case.  Rule 11 requires the trial court not only to inquire as to the defendant's understanding of the nature of the charge and consequences of his plea, but also the trial court must "satisfy himself that there is a factual basis for the plea."

Rule 11(b)(2), FRCP, requires that the court address the defendant "personally" in open court and determine that the plea is voluntary and did not

35

result from force, threats, or promises (other than promises in a plea agreement).
Rule 11(b)(3), FRCP, requires the court determine that there is a factual basis for
the plea before entering judgment on a guilty plea.

In Mr. Watkins' case, the Court committed three errors during the Rule 11
proceeding. First, it was conducted *en masse* with questions by the Court and
statements by the Government to four defendants at once. Second, the factual
basis presented by the Government was not sufficient to support the plea. It was
simply a recitation of the language of Count One of the indictment as it related to
Mr. Watkins. Mr. Watkins never agreed that the facts were accurate, instead he
disputed and contested the facts. Third, the plea agreement was not accepted by
the Court, therefore, Mr. Watkins believed he could withdraw from the agreement
at any time before it was finally accepted by the Court. A guilty please tainted by
"ignorance, incomprehension, coercion, terror, inducements, threats, or promises"
is void. United States v. Malcolm, 432 F.2d 890 (4th Cir. 1970).

Mr. Watkins met his burden of proof in accordance with Moore. 1) Watkins
alleged in letters and exhibits in the record that his plea was not knowing and not
voluntary. This was based on pressure from the Government and counsel that he
could possibly receive a life sentence. 2) Mr. Watkins clearly asserted his legal
innocence in the correspondence to the Court, and counsel, and at the time of the
evidentiary hearing on June 8, 2009. This, against the dramatic increase in his

advisory guideline range and application of the twenty-year mandatory minimum statutory penalty gives Mr. Watkins' statements more credibility. 3) There was a delay in entering the guilty plea and Watkins' initial attempt to withdraw his guilty plea. The delay was caused by several factors including the communication issues with his attorney and the discovery of the false grand jury and trial testimony of Paul A. Vaughn in January 2009. 4) Mr. Watkins did not have the "close assistance of competent counsel" during the plea process. This is based on the letters and exhibits in the record. 5) Watkins was only charged in Count One of the Indictment. Mr. Watkins did not review the discovery against him. Often the government uses evidence from co-defendants who are generally in custody and under the control of the Government. However, the Government failed to show any prejudice by allowing Mr. Watkins to withdraw his guilty plea. 6) Mr. Watkins submits the Court would not have been inconvenienced or wasted judicial resources by allowing him to withdraw his guilty plea. In balance, any additional resources or time would be offset by ensuring that Mr. Watkins received a fair trial.

### *Perjured Grand Jury Testimony*:

The record and exhibits establish that co-defendant Paul A. Vaughn admitted committing perjury and testifying falsely at the grand jury and at several trials. Vaughn alleged coercion by the Government and he acknowledged in notarized letters that he had lied about the involvement of Marcus Watkins in the

conspiracy.  Mr. Watkins was denied the effective assistance of counsel and the

opportunity to "knowingly" enter a plea because his plea was based on perjured

information.

An indictment may be challenged on the grounds of constitutional error and

prosecutorial misconduct.  United States v. Mills, 955 F.2d 480 (4th Cir. 1993).  If

the testimony of Paul A. Vaughn before the grand jury was false and it was the

primary basis for returning the indictment against Watkins, then Watkins' Fifth

Amendment rights to due process and grand jury were adversely impacted.  The

Fifth Amendment's right to indictment protects the interests of the innocent in

freedom from trials based on baseless criminal charges and in an independent,

impartial review of the facts supporting criminal charges.  In Mr. Watkins' case,

Paul A. Vaughn, under penalty of receiving a life sentence without his cooperation,

has said that Mr. Watkins was not involved in the conspiracy.  Mr. Watkins on the

record, and in correspondence, has stated that he is innocent of the crime.  Mr.

Watkins was prejudiced by Mr. Vaughn's false testimony.

### *Ineffective Assistance of Counsel*:

The record and exhibits herein established an obvious conflict and

communication issues between Mr. Watkins and his attorney, Mr. Cleaveland.

Generally, prejudice to a defendant is presumed when counsel is denied due to his

absence at a critical stage of the prosecution.  <u>Olden v. United States</u>, 224 F.3d 51 (6th Cir. 2000).

In Mr. Watkins' case, counsel was not present at a critical stage of this case on June 18, 2009 at the evidentiary hearing in Court.  Mr. Watkins was still represented by counsel, however, he was about to testify under oath and be asked questions from attorneys for other co-defendants and the Government.  Mr. Cleaveland was not present and he had not asked the Court to postpone Mr. Watkins' testimony until he could be present and properly advise Mr. Watkins. Rather than have the advise of counsel, the Court advised Mr. Watkins of his right to remain silent.

## <u>CONCLUSION (DEFENDANT EVANS)</u>

Mr. Evans respectfully asks this Court to find that the district court abused it's discretion in denying his motion to withdraw his guilty plea and Plea Agreement and to vacate his conviction and sentence accordingly.  Mr. Evans also asks this Court to reexamine it's holding in <u>Harp</u>, to find that his prior North Carolina Class I felony convictions do not qualify to enhance his federal sentence, and to vacate his conviction and sentence under § 841(b)(1)(A) in accordance with the Supreme Court precedent and arguments set forth herein.

## CONCLUSION (DEFENDANT WATKINS)

Mr. Watkins respectfully asserts that the District Court Judge abused his discretion by not allowing Mr. Watkins to withdraw his guilty plea after Watkins discovered new information regarding perjured testimony provided to the government. Additionally, Mr. Watkins asserted his legal innocence; Mr. Watkins did not have the close assistance of competent counsel; and, he was pressured into pleading guilty by the threat of life in prison. Therefore, his plea was not knowingly and voluntarily entered.

Mr. Watkins requests this Court to vacate his conviction and to remand his case to the District Court.

## STATEMENT IN SUPPORT OF
## ORAL ARGUMENT (DEFENDANT EVANS)

Mr. Evans asks for oral argument. The issues stated herein raise important federal and constitutional questions. The first and third issues also involve a split between this and other circuit law and a conflict between Fourth Circuit and Supreme Court law. Mr. Evans respectfully asks this Honorable Court to allow them to present his case more thoroughly before the Court through oral argument.

## STATEMENT IN SUPPORT OF
## ORAL ARGUMENT (DEFENDANT WATKINS)

Mr. Watkins requests oral argument.  The issues stated herein raise

important federal and constitutional questions.

Respectfully submitted,

/s/ Sandra B. Jelovsek
ATTORNEY AT LAW
BPR  # 014908
3520 Honeywood Drive
Johnson City, TN 37604
(423) 283-0450
(815) 527-0797 (Fax)
sjelovsek@mindspring.com

Attorney for Derrick Lamont Evans

/s/ Keith N. Hurley
KEITH N. HURLEY, P.C.
VSB # 33730
2727 McRae Road
Richmond, VA 23235
(804) 323-9735
(804) 323-9733 (Fax)
kehurley@aol.com

Attorney for Marcus Andrew Watkins

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

> [ X ] this brief contains [*9,540*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

> [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> [ X ] this brief has been prepared in a proportionally spaced typeface using [*Corel Word Perfect 12*] in [*14pt Times New Roman*]; *or*

> [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>October 12, 2010</u>                    /s/ Sandra B. Jelovsek
                                                      Attorney for Derrick Lamont Evans


                                                      /s/ Keith N. Hurley
                                                      Attorney for Marcus Andrew Watkins

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 12th day of October, 2010, I caused the

foregoing Brief of Appellants to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

> Zachary T. Lee
> Office of the U.S. Attorney
> 180 West Main Street, Suite B-19
> Abingdon, Virginia 24210
> (276) 628-4161
>
> *Counsel for Appellee*

I further certify that on this 12th day of October, 2010, I caused the required

copies of the foregoing Brief of Appellants and Joint Appendix to be hand-filed

with the Clerk of the Court, and a copy of the Joint Appendix to be served, via

UPS Ground Transportation, upon counsel for the Appellee, at the above address.

/s/ Sandra B. Jelovsek
Attorney for Derrick Lamont Evans

/s/ Keith N. Hurley
Attorney for Marcus Andrew Watkins